\*JAMES W. CULP AND WIFE v. C. L. STANFORD et al.

*Guardian—Negligence—Liability.*

Where a guardian carelessly and without deliberation, or, at the most, upon the hasty and "horseback" opinion of counsel, until then employed by the debtor and not by himself, and not by way of compromise of a doubtful claim, accepted from a solvent debtor half the sum he should have collected, he is responsible at the suit of his ward for what he failed or neglected to collect.

CIVIL ACTION, tried before *Graves, J.,* and a jury, at Fall Term, 1892, of MECKLENBURG Superior Court.

The facts in the case are as follows:

One Thomas Russell made a will appointing D. P. Lee executor. He devised certain moneys, about $1,300, to "be equally divided and paid over to Philip J. Russell, Miss Mary Russell, and the children of my niece, Martha, wife of Charles Stanford, in equal portion, share and share alike, to them and each and every of them." The Charles Stanford mentioned is the defendant in this case, and the *feme* plaintiff is his child. He became the guardian of his children, and when he came to collect for them what was due by Lee, executor, under the will, there was a question raised as to whether the division should be *per stirpes* or *per capita,* and the advice of Major Dowd, who was a lawyer of undoubted ability and character, but the counsel of the executor, was sought. Dowd decided that the division should be made *per stirpes,* and hence Stanford accepted in settlement one-third for all his children, and brought no suit for any more, because Dowd advised him that was all he was entitled to. Subsequently, in a suit between Culp,

---

\*BURWELL, J., having been of counsel, did not sit on the hearing of this case.

the present plaintiff, and Lee, the executor, the Supreme Court (109 N. C., 675) construed this clause of the will and held that the division should have been *per capita.*

In that case the Court said: "If the trustee, the guardian, was faithless or negligent, he was liable on his bond to an action by his wards after their arrival at age. Accordingly, the *feme* plaintiff has brought this action against her father on his guardian bond and seeks to hold him for the amount he should have collected, alleging that he was negligent in not collecting the full amount they claim.

On the trial J. Watt Kirkpatrick, one of the sureties on the guardian bond and a defendant in the action, testified: "I was present when Stanford, the guardian, made the settlement with Lee, the executor. Mr. Lee was Dowd's client, and we (Lee, executor; Stanford, guardian, and myself) agreed to leave it to him, Dowd. Vance and Dowd were associated. I thought Dowd at that time the best at the bar, at least as good as any. Lee said the will provided for paying out in three equal parts. Stanford paid Dowd a fee."

*Cross-examined.*—"Dowd was Lee's attorney. I said I would not go on Stanford's bond unless he would get Dowd. The settlement was in the Clerk's office."

The defendant C. L. Stanford guardian, testified: "I got Dowd. We, Lee and myself, both together, got Dowd, and he said that was correct; that is, that the fund was to be divided into three equal parts, as was done. I wanted to get all I could for my children. He, Dowd, said that was all that was due."

*Cross-examined.*—"Lee had Dowd as his lawyer, and I knew it and employed him. Lee told me how much he had—$1,300, I think."

Plaintiffs then introduced Major C. Dowd, who said: "I know Lee. I have known him for twenty years. He is

regarded as solvent. I do not remember that the parties ever came to me. I was not consulted about that clause of the will. I do not remember that I ever gave an opinion in the settlement. Stanford never paid me. I was counsel for Lee. I do not remember that I advised Lee about the settlement."

*Cross-examined.*—"Lee and Stanford never came and employed me together. I was Lee's counsel before. If I had been consulted I should have said the fund was to be divided into three equal parts. I should now say it was intended that way."

Stanford was recalled by defendants and said: "I do not know that I took a receipt. I paid Dowd five dollars."

The testimony being closed, the plaintiffs offered the following prayers of instruction:

1. That the advice of the attorney, Major Dowd, would not protect the client, Stanford, the guardian, against liability, or excuse his failure to collect the money.

2. That if the jury believed the evidence they should answer the first issue, " Yes."

3. Even if Stanford employed the attorney and acted under his advice, it was negligence to have employed the attorney or counsel already retained by the executor, Lee.

4. Even if Major Dowd was selected as an arbitrator, the guardian was guilty of negligence in selecting the attorney of the other side (Lee, executor) as arbitrator.

5. That it was negligence for the guardian, under the circumstances, to have submitted his case to arbitration, even if it was an arbitration.

The Court refused to give the instructions prayed for by plaintiffs, but instructed the jury as follows:

"Guardians are not held to be insurers against all loss of what may happen to the estate of the ward, but the guardian is required to use the utmost good faith, and to use

diligence and care in taking care of the estate; as the Judges sometimes express it, they must take such care and exercise such diligence as men of common and ordinary carefulness and diligence.

"In this case the duty of the guardian was to have collected all that was due him under the will of Thomas Russell; that is, an equal part or share with the other legatees in the fund left in the hands of the executor, Lee, for distribution, unless he can show you some excuse. The excuse which he makes is that he acted honestly and in good faith and with such care and diligence as a man of ordinary prudence would have done. He says, after the final settlement of the estate and the money was ready to be distributed under the will, that Mr. Dowd was advising the executor as to his duty, and that he employed Dowd, a good lawyer of good character and standing, to advise him also as to how much he was entitled to have out of the money, and that Dowd told them how, under the will, they should divide, and Dowd did advise them that he was only entitled to the amount that was paid to him, and therefore he did not know that under the will he was entitled to more; and that acting under such advice he did not bring suit. If this was done in good faith and with proper care, with such diligence and care as a man of ordinary care would have used, then your answer to the issue should be, 'No.'

"Now whether this is so or not you must determine upon the evidence. Stanford and Kirkpatrick testified in regard to this matter, and also Dowd. If the defendants have failed to show proper care and diligence on the part of the guardian, you should answer, 'Yes.'

"Was it prudent for him to take Dowd's advice? If a man of ordinary prudence would not have done so, the defendant ought not, and you must determine that way."

The plaintiffs offered the following exceptions:

Because the Court refused to give the instructions prayed for and to the charge of the Court as given.

The issues submitted by the Court and responses were as follows:

1. Was the defendant Stanford careless and negligent in the performance of his duties as guardian? To this issue the jury responded "No."

2. What amount of the funds in the hands of the executor, Lee, to which the plaintiff was entitled on November 16, 1876, was not paid to her guardian, the defendant Stanford? Answer. $109.20, with interest at six per cent. from November 16, 1876; interest compounded to June 1, 1889.

3. What part of the $109.20 which was received by the guardian has been paid to the plaintiffs, and what rate of interest does the said sum of $109.20 bear and from what time? A. Eight per cent. interest from November 16, 1876, for three years, and for balance of time six per cent., with payments or credits as follows: $133.75 October 1, 1891, and $7.50 February 1, 1892; interest to be compounded to June 1, 1889.

Judgment was rendered for the plaintiffs for only half of amount in hands of executor under the third issue, and judgment for defendants as to balance. Plaintiffs excepted and appealed.

*Mr. P. D. Walker*, for plaintiffs (appellants).
*Messrs. E. T. Cansler* and *Jones & Tillett*, for defendants.

CLARK, J.: The defendant guardian should have collected for his wards two-thirds of the fund. *Culp* v. *Lee*, 109 N. C., 675. Instead thereof he collected only one-third. In *Harris* v. *Harrison*, 78 N. C., 202, it is said: "Both by

statute and the decisions of the Courts  *  *  *  the guardian shall endeavor to collect by all lawful means his ward's estate upon pain of being liable if he neglect."

It is doubtful, 'to say the least, if the advice of counsel could be a defence where the law in favor of the ward's right to the fund had been so clearly settled by the authorities (cited in *Culp* v. *Lee, ante*) and the amount collected was only one-half of that due the wards, since the construction of the Court could have been readily had and would have been full protection. *Freeman* v. *Green,* 41 N. C., 373; *Batts* v. *Winstead,* 77 N. C., 238; *Boulton* v. *Beard,* 3 DeC. M. & G. R., 608. In the latter case it was held that the defendant, who made an error in the distribution of the funds of the residuary estate, could not defend himself by reason of having acted upon the advice of two eminent counsel of the chancery bar. To similar purport is *Wade* v. *Dick,* 36 N. C., 313.

*Luton* v. *Wilcox,* 83 N. C., 20; *Lawrence* v. *Morrison,* 68 N. C., 162, and other cases cited by defendant, were instances where the facts were doubtful or the chances of recovery uncertain, by reason of the insolvency of the defendant. In those cases where the fiduciary uses his best judgment and acts upon the advice of good counsel he will not be held liable if the event should show he might have recovered more. But in the present case there is simply a proposition of law which he could have submitted to the Court.

We would not be understood as holding that a fiduciary should litigate every legal question arising. In the majority of instances the advice of counsel will correctly settle the matter. There are others so doubtful or so contingent upon doubtful and unsettled facts, or the amount is so small, that he should compromise the matter.

But the present was not a compromise. If it be conceded

that the guardian would have been relieved if he had acted upon the advice of counsel, still he did not show reasonable care in this case. He did not apply to his own lawyer nor seek out counsel and lay the case before him. When the fund was ready to be paid over he simply, according to his evidence, asked the counsel of the party paying it over what part thereof was coming to his wards, and claims that he paid five dollars for the reply. The counsel himself says he has no recollection of being asked any question by the guardian and was not paid any fee. Though the counsel was a gentleman of recognized eminence in the profession the opinion (if given) seems to have been a reply made, without deliberation or reference to the authorities, to one who was not his client, and for which he says he was not paid. The advice (if given) seems to have been off-hand, and what is known in the profession as a "horseback opinion."

It was negligence in the defendant to surrender one-half of the fund which he should have collected without more care, deliberation or thought given to the subject than this evidence discloses. The party paying over the fund was solvent, and there was no such doubt as to either the law or the facts as called for a compromise. There was, in fact, no compromise. The guardian simply, carelessly, and without deliberation, and, at the most, upon the hasty opinion of counsel, till then employed by the debtor, not by himself, accepted half the sum he should have collected. He is responsible for his want of due care.

Error.